**IN THE  UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAWN BALL, | : | CIVIL NO. 1:12-CV-814 |
| | : | |
| Plaintiff, | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| | : | |
| LT. HUMMEL, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

In the Prison Litigation Reform Act, Congress established a series of procedures relating to prisoner civil litigation in federal court, procedures "designed to filter out the bad claims and facilitate consideration of the good." Jones v. Bock, 549 U.S. 199, 204 ( 2007).  One critical component of these reforms calls upon federal courts to perform a gatekeeping function with respect to *pro se* inmates who repeatedly seek leave to proceed *in forma pauperis* while filing frivolous or meritless claims.  As part of this statutorily mandated process, we are obliged to screen civil complaints lodged by *pro se* litigants who wish to proceed *in forma pauperis*, deny such leave to prisoners who have on three or more prior occasions filed frivolous or meritless claims in federal court, and dismiss these inmate complaints, unless the

1

inmate alleges facts showing that she is in imminent damage of serious bodily harm. 28 U.S.C. §1915(g).

In the instant case, we are now called upon to perform this function, a function which is an integral part of these Congressional "reforms designed to filter out the bad claims and facilitate consideration of the good"in this field  Jones v. Bock, 549 U.S. 199, 204 (2007).  The defendants have filed a motion to revoke the plaintiff's *in forma pauperis* status, (Doc. 21.), citing the dismissal of a series of lawsuits and appeals brought by Ball over the years.  This combination of dismissal orders compels us to address a specific question:  When a *pro se* litigant insists on pursuing wholly frivolous claims against judicial officers, who are absolutely immune from liability, does the dismissal of the plaintiff's claim as frivolous by both the district court and later by the court of appeals court as two separate strikes under §1915(g)'s three strike rule?

Following the majority rule adopted by the courts we find that each of these frivolous forays constitutes a separate strike under §1915(g).  We conclude, therefore, that, as of December 21, 2011, Ball has now incurred three strikes, a finding which requires that all future requests by Ball for *in forma pauperis* status be denied, unless Ball can show that the narrow, imminent danger exception to §1915(g) applies to her specific claims.

2

We further find that Ball had incurred these three strikes on May 2, 2012, when she filed the instant lawsuit, and that nothing in her complaint or motion for leave to proceed *in forma pauperis* excuses Ball from the sanctions mandated by 28 U.S.C. §1915(g), since Ball has not shown that she faced "imminent danger of serious physical injury" at the time that she filed this complaint.    Accordingly, we recommend that Ball's leave to proceed *in forma pauperis* be revoked, and Ball be directed to either pay the statutory filing fee, or supplement this motion for leave to proceed *in forma pauperis* in a fashion which satisfies the requirements of 28 U.S.C. §1915(g) within 20 days, or face the dismissal of the instant action.

## II.    Statement of Facts and of the Case

### A.    Dawn Ball's Litigation History

Dawn Ball is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses, and who has candidly acknowledged that she is profoundly disturbed.    Ball v. Beard, No. 1:09-CV-845 (Doc. 42, pp.6-7.). Furthermore, Ball is also an inmate who has reported to the court that she engages in multiple episodes of destructive, self-defeating and senseless behavior.

Much of this institutional misconduct is marked by disturbing, excretory behavior.  Indeed, a constant refrain throughout many of Ball's lawsuits is her

3

fascination with her own bodily wastes.  For example, recurring themes in Ball's lawsuits include Ball's penchant for smearing feces on herself, her clothes, her property, and her cell, as well as her destruction of her own clothing, and her use of her clothing to plug her toilet and flood her cell with water and human waste.  Ball v. Eiswerth, No. 1:08-CV-701(M.D.Pa.).  Ball is also, by her own admission, an inmate with a propensity for sudden, explosive  rages, as illustrated by the civil complaint which she has filed Ball v. Barr, No.1:11-CV-2240 (M.D.Pa.).  In this complaint, Ball describes an episode in which a discussion regarding the aesthetic qualities of a piece of cornbread escalated in a matter of moments into a profanity-laced wrestling match over a food tray.

Ball is a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison.  Indeed, at present Ball currently has more than 25 lawsuits pending before this court.[1]

---

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-

Furthermore, Ball is a prodigiously unsuccessful litigant, who has had numerous prior lawsuits and appeals dismissed either as frivolous or on the grounds that the lawsuit failed to state a claim upon which relief could be granted.

The history of repeated, frivolous and meritless litigation in federal court by this plaintiff began in March of 2008, when Ball filed a complaint in the case of <u>Ball v. SCI Muncy,</u> No. 1:08-CV-391 (M.D. Pa.).  On December 10, 2008, the district court dismissed this civil action, citing Ball's failure to exhaust her administrative remedies, and stating that Ball:

> does not dispute that she failed to exhaust her administrative remedies with regard to the issues raised in the complaint. Plaintiff's failure to oppose the remaining Defendants' motion, which also seeks dismissal for failure to exhaust administrative remedies, renders the motion unopposed. See L.R. 7.6. It is clear that Plaintiff's claims are not properly before this Court and must be dismissed.

(Doc. 36, p.5.)

While, fairly construed, the district court's dismissal decision rested on exhaustion grounds, and did not entail an analysis of the merits of Ball's claims, the dismissal order itself went on to state that any appeal of this dismissal would be "deemed

---

CV-2240 (M.D.Pa.); <u>Ball v Giroux</u>, No. 1:12-CV-10 (M.D.Pa.); <u>Ball v Giroux</u>, No. 1:12-CV-11 (M.D.Pa.); <u>Ball v Curham</u>, No. 1:12-CV-12 (M.D.Pa.); <u>Ball v. Giroux</u>, No. 1:12-CV-812 (M.D.Pa.); <u>Ball v. Giroux</u>, No. 1:12-CV-813 (M.D.Pa.); <u>Ball v. Hummel</u>, No. 1:12-CV-814 (M.D.Pa.); <u>Ball v. D'Addio</u>, No. 1:12-CV-815 (M.D.Pa.) .

frivolous and not in good faith." Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.)

(Doc. 36, p.6.)

Nonetheless, Ball appealed this ruling. (Doc. 37.) On July 22, 2010, the

United States Court of Appeals for the Third Circuit affirmed the dismissal of this

action, noting that:

> The District Court granted the Defendants' motions to dismiss, pursuant
> to Federal Rule of Civil Procedure 12(b)(6), on the grounds of failure to
> exhaust administrative remedies. We agree with the District Court's
> decision and accordingly affirm the dismissal of Ball's claims.

Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.)(Doc. 44, p. 2-3.). Thus, the court

of appeals' ruling, like the district court's decision, was expressly based upon Ball's

failure to exhaust her administrative remedies.

On May 5, 2009, Ball filed another civil action in the case of Ball v. Hartman,

No. 1:09-CV-844 (M.D. Pa.). This action was also dismissed by the district court,

which on this occasion considered the merits of Ball's claims and explicitly

concluded that Ball had failed to state a claim upon which relief could be granted.

Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Docs 32, 33, and 36.). Therefore, this

second dismissal involved a merits analysis of Ball's claims, and a determination that

Ball's complaint "fail[ed] to state a claim upon which relief may be granted." 28

U.S.C. § 1915(g). Ball appealed this dismissal order, Ball v. Hartman, No. 1:09-CV-

844 (M.D. Pa.) (Doc 34.), but this dismissal was subsequently affirmed by the court of appeals, on October 29, 2010. <u>Ball v. Hartman</u>, No. 1:09-CV-844 (M.D. Pa.) (Doc. 48.)

Ball then filed yet another lawsuit in the case of <u>Ball v. Butts</u>, No. 1:11-CV-1068, (M.D.Pa.) on June 3, 2011. <u>Ball v. Butts,</u> No. 1:11-CV-1068 (M.D.Pa.)(Doc. 1.) In this action Ball chose to sue a state court judge, ignoring the well-settled legal doctrine that judicial officers are absolutely immune from liability for actions taken presiding over litigation. <u>Mireless v. Waco</u>, 502 U.S. 9, 13 (1991). On June 15, 2011, upon a screening review of this complaint, the district court dismissed this action for failure to state a claim upon which relief could be granted. <u>Ball v. Butts,</u> No. 1:11-CV-1068 (M.D.Pa.)(Doc. 8).

Ball appealed this dismissal. <u>Ball v. Butts,</u> No. 1:11-CV-1068 (M.D.Pa.)(Doc. 10). On September 21, 2011, the court of appeals entered an opinion and order dismissing Ball's appeal as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B). That appellate court opinion and order spoke unambiguously regarding the frivolous nature of this particular lawsuit filed by Ball, stating in clear and precise terms that:

> Because we too have granted Ball leave to proceed IFP, we must screen this appeal to determine whether it is frivolous. <u>See</u> 28 U.S.C. § 1915(e)(2)(B)(I). An appeal is frivolous if it "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989).This appeal lacks any such basis. As the District Court

adequately explained, immunity extends even to judicial acts that are "done maliciously," and Ball has alleged nothing suggesting that Judge Butts acted in the "clear absence of all jurisdiction." <u>Gallas v. Supreme Court of Pa.</u>, 211 F.3d 760, 769 (3d Cir.2000) (citation and internal quotation marks omitted). To the extent that Ball's request for injunctive relief might not have been subject to dismissal under § 1915(e)(2)(B)(iii), it was subject to dismissal under § 1915(e)(2)(B)(ii) because such relief is not available against "a judicial officer for an act ... taken in such officer's judicial capacity" under these circumstances. 42 U.S.C. § 1983. Finally, we are satisfied that any amendment of Ball's complaint would be futile. <u>See Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 111 (3d Cir.2002). Thus, we will dismiss this appeal.

<u>Ball v. Butts</u>, No. 11-2862,  2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

With respect to the legal effect of this dismissal order as a "strike" under 28 U.S.C. §1915(g), as a matter of law:  "[A] strike ripens to be counted from the date of the Supreme Court's denial or dismissal of a petition for writ of certiorari, if the prisoner filed one, or from the date when the time to file a petition for writ of certiorari expired, if he did not." <u>Smith v. V.A.</u>, 636 F.3d 1306, 1310-11 (10th  Cir. 2011).  A litigant has 90 days to file a petition for writ of certiorari. 28 U.S.C. § 2101(c).  Where the prisoner did not file a direct appeal in a circuit court, a district court's dismissal counts as a strike from the date when his time to file a direct appeal expired. <u>Smith</u>, 636 F.3d at 1311.  Here, Ball did not seek Supreme Court review of this final dismissal order.  Therefore, the appellate's court's dismissal of this action

became a final order, which could be considered when assessing Ball's non-compliance with 28 U.S.C. §1915(g), on December 21, 2011.

Beyond these prior dismissals, Ball has also had a series of improvident interlocutory appeals dismissed by the United States Court of Appeals for the Third Circuit. For example, in Ball v. Muncy SCI-Inst., No.1:08-CV-701 (M.D.Pa.), on June 12, 2009, the Court of Appeals dismissed an interlocutory appeal lodged by the plaintiff. Ball v. Muncy SCI-Inst., 09-1367 (3d Cir.). ( Doc. 17, Exhibit H.) Likewise, in Ball v. Hill, No.1:09-CV-773 (M.D.Pa.), on October 6, 2010, the Court of Appeals dismissed another meritless interlocutory appeal taken by the plaintiff. Ball v. Hill, 10-1703 (3d Cir.)(Doc. 17, Exhibit I.).

However, this past history of repetitive, meritless and frivolous litigation by Ball actually understates dramatically the extent to which Ball has indulged in what has been determined to be pointless, meritless and often frivolous litigation. Indeed, in addition to these fully-documented prior dismissal orders, Ball currently has at least eleven other cases[2] pending before this court where there have been reports and

---

[2] Ball v. Eiswerth, No. 1:08-CV-701(M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-10 (M.D.Pa.);Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-812 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-813 (M.D.Pa.); Ball v. D'Addio, No. 1:12-CV-815 (M.D.Pa.).

recommendations issued, or adopted, calling for dismissal of claims.

## B.   Ball's Current Lawsuit

### 1.   Factual Background

It is against the backdrop of this history of unsuccessful, unexhausted, feckless and meritless filings that Ball instituted the current lawsuit.  On May 2, 2012, Ball filed the instant *pro se* complaint.  (Doc. 1.)  Ball's initial *pro se* complaint named 19 defendants and alleged that a number of these defendants used excessive force against Ball during the course of a January 10, 2012, cell extraction.  (Id.)  On May 3, 2012, we initially granted Ball leave to proceed *in forma pauperis*, and ordered this complaint served.  (Doc. 7.)  The defendants have now moved to revoke this *in forma pauperis* status, citing the dismissal of Ball's prior lawsuits and appeals.  (Doc. 21.)

Ball has responded to this motion.  (Doc. 31.)[3]  Accordingly, this matter is now

_____

[3]In her response to this motion Ball raises an unrelated issue, claiming that she is being denied access to legal materials. This is a recurring theme in all of Ball's litigation, and is a theme that has been expressly rebutted by the defendants. Thus, on May 15, 2012, Ball made this claim in connection with a request to stay all of her multi-faceted federal court litigation, in an apparent effort to delay or avoid rulings in these cases on many ripe defense motions. We denied this request made by Ball, noting that there was something profoundly inconsistent in these pleadings, since Ball's motions began with factual averments which detailed a series of allegedly improper actions by prison officials, allegations which if true required immediate attention by the courts. Yet, while Ball recited facts which cried out for action by the courts, she sought relief which would not be in her interests, or in the interests of justice: a complete cessation of this litigation. Because we believed that we owed it to Ball, and to all of the many defendants she

ripe for resolution.  For the reasons set forth below, it is recommended that the motion

to revoke *in forma pauperis* status be granted.

## II.    Discussion

### A.    Guiding Principles–28 U.S.C. §1915(g).

Defendants argue that the Court should revoke Ball's *in forma pauperis* status

under 28 U.S.C. § 1915(g), because she has at least three merits-based dismissals of

other actions or appeals that Ball previously filed.

---

has sued, to promptly address the merits of her claims, we denied Ball's first
motion to generally stay all of Ball's litigation to some future date of her choosing.
Instead, we  instructed the Department of Corrections to respond to Ball's
allegations, and the defendants have filed a declaration which explains that Ball
had long been given permission to keep multiple boxes of records in her cell but
that  Ball's access to the 16 boxes of legal material she has amassed was
temporarily curtailed following an incident in which she engaged in self-
destructive conduct. The defendants also reported that they have offered to return
these materials but Ball now refuses the return of her legal materials.

We further instructed Ball in clear and precise terms that any future requests
for continuance or stay must be made individually by Ball in each of her cases
along with factual averments specific to each particular case explaining why a stay
or continuance is necessary. Presented with this clear instruction from the Court,
Ball then chose to ignore this guidance and filed another global stay request in all
of her cases. Indeed, in this second stay motion Ball endeavored not only to ignore
the court's prior order, but to try to ignore the court altogether by instructing the
clerk's office to present these latest stay motions to another judge. Furthermore,
Ball's motion sought more than a stay of future litigation, she also demanded that
all orders in all of her cases entered since April, 2012, be "revoked."   We denied
this second stay motion as well.

Section 1915(g) of the Title 28 of the United States Code provides that:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The purpose of this "three strikes" provision was to restrain inmate abuses of the court system, and to deter the filing of multiple frivolous lawsuits by inmates. See Abdul-Akbar v. McKelvie, 239 F.3d 307, 318 (3d Cir. 2001) ("[T]he legislation was aimed at the skyrocketing numbers of claims filed by prisoners – many of which are emotionally driven but legally deficient – and the corresponding burden those filings have placed on the federal courts.")  The legislation was thus intended to serve "as a rational deterrent mechanism, forcing potential prisoner litigants to examine whether their filings have any merit before they are filed, and disqualifying frequent filers who have failed in the past to carefully evaluate their claims prior to filing." Id.  Notably, "the bar imposed by this provision does not preclude an inmate from bringing additional suits.  It does, however, deny him or her the right to obtain *in forma pauperis* status." Gibbs v. Cross, 160 F.3d 962, 965 (3d Cir. 1998).  Congress enacted 28 U.S.C. § 1915(g) with the express purpose of "[d]eterring frivolous

12

prisoner filings in the federal courts [a goal which] falls within the realm of Congress' legitimate interests." Abdul-Akbar v. McKelvie, 239 F.3d 307, 318-19 (3d Cir. 2001). With this goal in mind, it is well-settled that, "generally, a prisoner may not be granted IFP [*in forma pauperis*] status if, on three or more occasions, he brought an action that was dismissed as frivolous," Brown v. City Of Philadelphia, 331 F. App'x 898, 899, (3d Cir.2009), and inmates who attempt to bring such lawsuits *in forma pauperis* should have their complaints dismissed. Id.

In determining whether a particular inmate-plaintiff has had three prior dismissals, or "three strikes," under §1915(g), we look to the status of the plaintiff's prior litigation history at the time she filed the current lawsuit. Thus, only dismissals which were actually ordered at the time of the filing of the instant case are counted towards a "three strike" assessment under §1915(g), and "[a] dismissal does not qualify as a 'strike' for § 1915(g) purposes unless and until a litigant has exhausted or waived his or her appellate rights. See Jennings v. Natrona County Det. Ctr. Med. Facility, 175 F.3d 775, 780 (10th Cir.1999); Adepegba v. Hammons, 103 F.3d 383, 387-88 (5th Cir.1996)." Lopez v. U.S. Dept. of Justice, 228 F. App'x 218 (3d Cir. 2007).

Furthermore, with respect to determining when a dismissal order is ripe and counts as a strike against a *pro se* plaintiff, as a matter of law: "[A] strike ripens to

be counted from the date of the Supreme Court's denial or dismissal of a petition for writ of certiorari, if the prisoner filed one, or from the date when the time to file a petition for writ of certiorari expired, if he did not." Smith v. V.A., 636 F.3d 1306, 1310-11 (10th Cir. 2011).   A litigant has 90 days to file a petition for writ of certiorari. 28 U.S.C. § 2101(c).   Where the prisoner did not file a direct appeal in a circuit court, a district court's dismissal counts as a strike from the date when his time to file a direct appeal expired.  Smith, 636 F.3d at 1311.  However, in assessing when a particular inmate plaintiff is subject to the gatekeeping provisions of § 1915(g), it is also clear that "lawsuits dismissed as frivolous prior to the enactment of the PLRA count as 'strikes' under § 1915(g).  See Adepegba v. Hammons, 103 F.3d 383 (5th Cir.1996); Abdul-Wadood v. Nathan, 91 F.3d 1023 (7th Cir.1996); Green v. Nottingham, 90 F.3d 415 (10th Cir.1996)."  Keener v. Pennsylvania Bd. of Probation & Parole, 128 F.3d 143, 144 (3d Cir. 1997).

The grounds of dismissal cited by the court in its dismissal orders are also significant in this setting.  Section 1915(g) provides that the preclusive effect of this three strikes rule only applies where each of the prior cases "was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted."  Id.  Focusing on this statutory text, courts generally agree that the dismissal of an inmate lawsuit simply for failure to exhaust administrative remedies

doe not constitute a dismissal "on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted."  Therefore, such dismissals are typically not considered strikes for purposes of §1915(g)'s three strikes rule.  See, e.g., Tolbert v. Stevenson, 635 F.3d 646 (4th Cir. 2011); Turley v. Goetz, 625 F.3d 1005 (7th Cir, 2010); Tafari v. Hues, 473 F.3d 440 (2d Cir. 2007); Owens v. Isaac, 487 F.3d 561 (8th Cir. 2007);  Green v. Young, 454 F.3d 405 (4th Cir. 2006); Henry v. Medical Dept. at SCI Dallas, 153 F.Supp. 2d. 153, 155 (M.D. Pa. 2001).   In contrast, "[t]he IFP statute does not explicitly categorize as frivolous a claim dismissed by reason of judicial immunity, but we will:  Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of 28 U.S.C. § 1915(g)."  Mills v. Fischer, 645 F.3d 176, 177 (2d Cir. 2011).

By its terms, §1915(g) provides that *in forma pauperis* status should be denied to a prisoner:  "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, *brought an action or appeal* in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted."  28 U.S.C. §1915(g).  The plain language of §1915(g) makes it unmistakably clear that both frivolous civil actions and meritless appeals are counted in assessing these three strikes.  However, the courts are mindful of the fact that virtually every appeal stems from an underlying civil action and have,

therefore, adopted a careful and measured approach to assessing strikes based upon appeals in order to ensure that these strikes do not unduly multiply against a prisoner-plaintiff solely through the exercise of her appellate rights.

Adopting this careful and measured approach, it has been held that: "The plain language of the statute thus limits the application of a strike to a dismissal, not an affirmance of a dismissal.  See Jennings v. Natrona County Det. Ctr. Med. Facility, 175 F.3d 775, 780 (10th Cir.1999)." Ali v. Howard, 353 F. App'x 667, 668 (3d Cir. 2009)  Therefore, the affirmance of a dismissal order, standing alone, will not constitute a strike for purposes of §1915(g).  Similarly, while an interlocutory appeal that is expressly dismissed by an appellate court as frivolous may count as a strike under §1915(g), see King v. Anderson, 234 F.App'x 321 (5th Cir. 2007), the mere dismissal of  an interlocutory appeal for want of jurisdiction because the appeal is improvident and premature does not constitute a strike against a *pro se in forma pauperis* litigant. Tafari v. Hues, 473 F.3d 440 (2d Cir. 2007).

However, even this very measured approach recognizes that there are instances in which a prisoner litigant will file both a frivolous lawsuit, and a frivolous appeal. In such instances, it has been held that both the frivolous lawsuit, and the separate frivolous appeal counts as a strike under §1915(g).  As one court has aptly explained in addressing this question:

28 U.S.C. § 1915 allows indigent prisoners to defer paying filing fees under a structured payment plan. *See* 28 U.S.C. § 1915(b). Section 1915(g), however, denies this option to so-called "frequent filers," prisoners who have repeatedly brought legal claims dismissed as frivolous, malicious, or not stating a claim; such litigants must pay the filing fee up front. The provision reads:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Id. § 1915(g).  At issue in this case is whether a plaintiff incurs one strike or two when he (1) files a complaint that is dismissed on one of the listed grounds and then (2) appeals that dismissal, only to have the appeal dismissed, also on one of the listed grounds.  The question, thus, is: does § 1915(g), in referring to occasions on which a plaintiff "brought an action or appeal," use "action" to refer *only* to proceedings before the district court; or, as Chavis argues, does "action" mean the entire course of a lawsuit, leaving "appeal" to refer solely to cases in which a plaintiff appeals a non-strike district court disposition? Every circuit court to address the matter has held that sequential dismissals count as two strikes. *See* Jennings v. Natrona County Det. Ctr. Med. Facility, 175 F.3d 775, 780 (10th Cir.1999); Hains v. Washington, 131 F.3d 1248, 1250 (7th Cir.1997) (per curiam); Henderson v. Norris, 129 F.3d 481, 485 (8th Cir.1997) (per curiam); Adepegba v. Hammons, 103 F.3d 383, 388 (5th Cir.1996). As the Seventh Circuit explained:

> Under this language, bringing an action and filing an appeal are separate acts. One could be frivolous, the other not. Having been told that his complaint is frivolous, a prisoner must decide whether to appeal. Prisoners who

> learn from their mistakes will suffer one strike, at most, in a case. Obstinate or malicious litigants who refuse to take no for an answer incur two strikes. That approach not only comports with the statutory language but also fortifies the deterrence of frivolous activities in litigation.

> Newlin v. Helman, 123 F.3d 429, 433 (7th Cir.1997) (citation omitted), overruled on other grounds by Walker v. O'Brien, 216 F.3d 626 (7th Cir.2000), and Lee v. Clinton, 209 F.3d 1025 (7th Cir.2000). Or, as the Fifth Circuit put it, "Congress suggests in the statute that *any* appeal dismissed as frivolous counts against the petitioner; it makes no exception for frivolous appeals of district court dismissals." Adepegba, 103 F.3d at 388. This majority position is the most natural reading of § 1915(g).

Chavis v. Chappius, 618 F.3d 162, 167-68 (2d Cir. 2010).  Thus, the successive dismissal of both a civil complaint, and subsequent appeal, as frivolous will constitute two strikes under §1915(g).

Once it is determined that an inmate-plaintiff has had at least three prior lawsuits or appeals dismissed "on the grounds that [they were] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted," 28 U.S.C. § 1915(g) compels denial of *in forma pauperis* status and dismissal of *in forma pauperis* lawsuits unless the inmate alleges that he or she "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).  With respect to this specific statutory exception, it is clear that:

The clause "unless he is in imminent danger of serious physical injury" is an exception to the preclusive effect of the statute. But the exception is cast in the present tense, not in the past tense, and the word "is" in the exception refers back to the same point in time as the first clause, i.e., the time of filing. The statute contemplates that the "imminent danger" will exist contemporaneously with the bringing of the action. Someone whose danger has passed cannot reasonably be described as someone who "is" in danger, nor can that past danger reasonably be described as "imminent."

Abdul-Akbar v. McKelvie, 239 F.3d at 313.

Moreover, in making this assessment of imminent danger:

A court need not accept all allegations of injury made pursuant to § 1915(g). To the contrary, a court may discredit "factual claims of imminent danger that are 'clearly baseless,' i.e., allegations that are fantastic or delusional and rise to the level of the 'irrational or wholly incredible.' " Gibbs v. Cross, 160 F.3d 962, 967 (3d Cir.1998) (citing Denton v. Hernandez, 504 U.S. 25, 33 (1992)). The Supreme Court has directed that, in assessing a case under 28 U.S.C. § 1915, we are not required to accept without question the truth of the plaintiff's allegations. See Denton, 504 U.S. at 32. Rather, we may be guided by judicially noticeable facts in determining whether the allegations are baseless or wholly incredible.

Brown v. City Of Philadelphia, 331 F. App'x at 900.

### B.    Application of §1915(g)'s Three Strike Rule  to This Lawsuit

In this case, the defendants first argue that application of these guiding legal principles leads to the conclusion that, as of December 21, 2011, Ball had "three strikes" under §1915(g), since three of her prior lawsuits or appeals were subject to final orders of dismissal as frivolous.

We agree.  In reaching this conclusion, we find that two of the prior district court dismissals suffered by Ball, in  Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.) and Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.), plainly constitute strikes under §1915(g).  In both instances, the district court dismissed Ball's complaint for failure to state a claim upon which relief can be granted, a grounds for invoking §1915(g)'s statutory preclusion.  Moreover, in both instances, Ball exhausted her appeals, rendering these decisions final orders.

We further find that the dismissal of Ball's appeal in Ball v. Butts, also constitutes a strike against this prisoner-plaintiff under §1915(g).  As we have noted, on September 21, 2011, the court of appeals entered an opinion and order dismissing Ball's appeal as frivolous  pursuant to 28 U.S.C. § 1915(e)(2)(B).  That appellate court opinion and order spoke unambiguously regarding the frivolous nature of this particular lawsuit filed by Ball, stating in clear and precise terms that:

> Because we too have granted Ball leave to proceed IFP, we must screen this appeal to determine whether it is frivolous. See 28 U.S.C. § 1915(e)(2)(B)(I). An appeal is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).This appeal lacks any such basis. As the District Court adequately explained, immunity extends even to judicial acts that are "done maliciously," and Ball has alleged nothing suggesting that Judge Butts acted in the "clear absence of all jurisdiction." Gallas v. Supreme Court of Pa., 211 F.3d 760, 769 (3d Cir.2000) (citation and internal quotation marks omitted). To the extent that Ball's request for injunctive relief might not have been subject to dismissal under § 1915(e)(2)(B)(iii), it was subject to dismissal under § 1915(e)(2)(B)(ii)

because such relief is not available against "a judicial officer for an act ... taken in such officer's judicial capacity" under these circumstances. 42 U.S.C. § 1983. Finally, we are satisfied that any amendment of Ball's complaint would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir.2002). Thus, we will dismiss this appeal.

Ball v. Butts, No. 11-2862,  2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).  This ruling, in turn, is entirely consistent with case law which unambiguously recognizes that the dismissal of actions on grounds of absolute judicial immunity constitutes a finding that the appeal was frivolous.  See Mills v. Fischer, 645 F.3d 176, 177 (2d Cir. 2011)("[t]he IFP statute does not explicitly categorize as frivolous a claim dismissed by reason of judicial immunity, but we will:  Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of 28 U.S.C. § 1915(g).")  Furthermore, we agree with the majority rule expressed by the courts that, in this setting the successive dismissal of both a civil complaint, and subsequent appeal, as frivolous will constitute two strikes under §1915(g). Chavis v. Chappius, 618 F.3d 162, 167-68 (2d Cir. 2010)(collecting cases).

Thus we find that, effective December 21, 2011, Ball has "three strikes" against her and is, therefore, barred from proceeding in forma pauperis after that date in any litigation unless she can demonstrate that she "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

Ball cannot currently avail herself of the "imminent danger" exception to §
1915(g)'s preclusive effect.  In making this imminent danger assessment, it is clear
that:  "The statute contemplates that the 'imminent danger' will exist
contemporaneously with the bringing of the action.  Someone whose danger has
passed cannot reasonably be described as someone who 'is' in danger, nor can that
past danger reasonably be described as 'imminent.' "  Abdul-Akbar v. McKelvie, 239
F.3d at 313.  Furthermore,  "[a] court need not accept all allegations of injury made
pursuant to § 1915(g).  To the contrary, a court may discredit 'factual claims of
imminent danger that are "clearly baseless," i.e., allegations that are fantastic or
delusional and rise to the level of the "irrational or wholly incredible." ' Gibbs v.
Cross, 160 F.3d 962, 967 (3d Cir.1998) (citing Denton v. Hernandez, 504 U.S. 25, 33
(1992))."  Brown v. City Of Philadelphia, 331 F. App'x at 900.

"Instead, ' "[i]mminent" dangers are [only] those dangers which are about to
occur at any moment or are impending.' " Meyers v. U.S. Dist. Court for the Middle
Dist. of Pennsylvania, 1:11-CV-0173, 2011 WL 766937 (M.D. Pa. Feb. 25, 2011).
Therefore,  "[t]he 'imminent danger' exception to § 1915(g)'s 'three strikes' rule is
available [solely] 'for genuine emergencies,' where 'time is pressing' and 'a threat ...
is real and proximate.' Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir.2002)."  Banks
v. Crockett, CIV.A. 1:07-CV-1019, 2007 WL 1655504 (M.D. Pa. June 7, 2007).

Applying these legal benchmarks, courts have rejected inmate claims in cases such as this, where months have elapsed between the allegedly dangerous incidents cited by the inmate-plaintiff, and the filing of the civil action. "For example, in Abdul–Akbar, a prisoner with three strikes, filed on February 10, 1998, a motion for leave to proceed IFP in a civil rights suit, which alleged that on January 9, 1998, prison officials arbitrarily sprayed the prisoner with pepper gas and thereafter refused to provide him with medical treatment even though the prison officials knew the prisoner suffered from asthma.  The District Court denied the prisoner IFP status based on his having three strikes.  The prisoner appealed, and the Court of Appeals, en banc,. . . , held that notwithstanding the passage of less than one month, between the incident and the filing of the IFP application, the prisoner plaintiff did not demonstrate imminent danger of serious physical injury."  Cunningham v. Westmoreland County Officials, CIV.A. 11-971, 2011 WL 4056133 (W.D. Pa. Aug. 18, 2011) report and recommendation adopted, CIV.A. 11-971, 2011 WL 4056110 (W.D. Pa. Sept. 13, 2011)(emphasis added).  See, e.g., Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003) (allegations that defendants forced plaintiff to work outside in inclement conditions on two occasions five months apart did not state imminent danger);  Hatten v. Young, CIV.A. 1:10-2660, 2011 WL 1328973 (M.D. Pa. Feb. 25, 2011) report and recommendation adopted, 1:CV-10-2660, 2011 WL

23

1303302 (M.D. Pa. Apr. 5, 2011) (Two months delay between alleged harm and filing, *held*, "With respect to the instant action, it is clear that the plaintiff's allegations do not meet the standard of imminent danger set forth by the Third Circuit in Abdul–Akbar v. McKelvie, supra.  In fact, there is no indication from the plaintiff's allegations that he is currently in any imminent danger of bodily harm, or even that he was in imminent danger of bodily harm at the time of the filing of his complaint. Although the plaintiff has alleged that he was assaulted by prison officials in 2008 during his incarceration at USP Florence, subjected to excessive force at FCI Oakdale, and the victim of an attack at USP Lewisburg in September of 2010–the plaintiff has only alleged past injury or harm"); Pew v. Beard, CIV.A. 07-1585, 2008 WL 238579 (W.D. Pa. Jan. 28, 2008)(denying IFP status finding no imminent danger since the plaintiff waited for more than one year to file his IFP application after the alleged wrongdoing by the defendants).

Here, four months elapsed between Ball's January 10, 2012, cell extraction in which the plaintiff alleges that she was physically harmed, and the filing of this action.  Even if we accept that the well-pleaded facts in Ball's complaint described a danger of physical harm at the time of the January 10, 2012, cell extraction, we cannot find that this danger was "imminent" four months later, when Ball brought this lawsuit.  Since "[t]he 'imminent danger' exception to § 1915(g)'s 'three strikes' rule

is available [solely] 'for genuine emergencies,' where 'time is pressing' and 'a threat ... is real and proximate.' <u>Lewis v. Sullivan</u>, 279 F.3d 526, 531 (7th Cir.2002)," <u>Banks v. Crockett</u>, CIV.A. 1:07-CV-1019, 2007 WL 1655504 (M.D. Pa. June 7, 2007), the passage of these four intervening months compels us to conclude that Ball has not described an imminent harm in her complaint which would justify avoidance of the sanctions prescribed by 28 U.S.C. §1915(g) for inmates like Ball who persist in filing frivolous lawsuits and appeals.

Nor can Ball save these otherwise inadequate pleadings by alleging in vague and conclusory terms that she feels constantly under threat of some sort of harm. Quite the contrary, it is well-settled that:  "this type of general assertion: is insufficient to invoke the exception to § 1915(g) absent specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury.  <u>See</u> <u>Abdul-Akbar</u>, 239 F.3d at 315 n. 1." <u>Martin v. Shelton</u>, 319 F.3d 1048, 1050 (8th Cir. 2003)

In short, we find that Dawn Ball's reckless and feckless course of *pro se, in forma pauperis* litigation has now run its course since, effective December 21, 2011, Ball has incurred three strikes under 28 U.S.C. §1915(g), and may not obtain leave to proceed *in forma pauperis* unless she can demonstrate that she "is under imminent

danger of serious physical injury," 28 U.S.C. § 1915(g), a showing which Ball has not made in this case at present.

While this analysis calls for revocation of Ball's leave to proceed *in forma pauperis*, we recommend that the plaintiff be given another, final opportunity to further litigate this matter by either tendering the filing fee required by law, or by endeavoring to promptly file a proper motion for leave to proceed *in forma pauperis*. We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend pleadings before a complaint is dismissed in its entirety,  see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Accordingly, we recommend that Ball's leave to proceed *in forma pauperis* be revoked, and Ball be directed to either pay the statutory filing fee, or supplement this motion for leave to proceed *in forma pauperis* in a fashion which satisfies the requirements of 28 U.S.C. §1915(g) within 20 days, or face the dismissal of the instant action.

## III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that Ball's leave to proceed *in forma pauperis* be revoked, and Ball be directed to either pay the

statutory filing fee, or supplement this motion for leave to proceed *in forma pauperis* in a fashion which satisfies the requirements of 28 U.S.C. §1915(g) within 20 days, or face the dismissal of the instant action.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 30th day of July 2012.

**S/Martin C.  Carlson**
Martin C. Carlson
United States Magistrate Judge